# EXHIBIT B



BENJAMIN QIU
Partner

北京市朝阳区建国门外大街2号
北京银泰中心C座4301室
邮编100022

直线  直线 852.3923.1143
传真  +86 10 5954 3`500
bqiu@loeb.com

Confidential: Attorney-Client Privileged Communication
Via E-mail

August 5, 2020

Ms. Anna Cui
Hangzhou Chic Intelligent Technology Co., Ltd.
2/F, No. 2 Building, Liangzhu University,
2 Science and Technology Park, No. 1 Jingyi Road,
Liangzhu, Hangzhou, 311112, People of the Republic of China

Jin Yuan Lei
Manager
Unicorn Global, Inc.
18333 Gale Avenue
City of Industry, CA 91748-1201

Re:   Engagement Letter

Dear Ms. Anna Cui and Mr. Jin Yuan Lei:

We are pleased that our firm has been chosen to jointly represent Hangzhou Chic Intelligent Technology Co., Ltd. and Unicorn Global, Inc. (collectively, "Client" or "you"). This letter is meant to replace the one that has recently been signed by Hangzhou Chic. We provide below the terms of our forthcoming representation, which remains subject to our standard internal management approval process. We will, of course notify you know promptly, in writing, if for any reason, we do not receive such approval. If you have any questions concerning any of the information provided in this letter, I will welcome your call.

1.   Scope of Services.

Our initial responsibilities on your behalf will be in connection with certain intellectual property rights and we will provide the following legal services:

   (a)   Rights enforcement related advice; and

   (b)   Representation in enforcement actions, including but not limited to drafting court and government agency documents, official filing, intellectual property counseling, and settlement agreements.

Thereafter, we will perform such further legal services for you as you and we may agree upon from time to time. All further legal services will be governed by the terms of this letter.

2.   Fees.

Our fees shall be based on the number of hours spent on your matter, at the hourly billing rates of the attorneys and paraprofessionals who work on your matter. My current billing rate is $760 per hour and I will be principally responsible for overseeing this matter. I presently contemplate


Ms. Anna Cui
Jin Yuan Lei
August 5, 2020
Page 2

Confidential: Attorney-Client Privileged Communication

that others may work on the matter, including Adam Kelly, Doug Masters, Arthur Yuan, and Christopher Binns. The firm's billing rates are adjusted periodically, usually at the beginning of the calendar year, and any such adjustment is applicable to the legal services performed after the new rates become effective. You will be able to ascertain any such adjustments from our invoices, which reflect the hourly billing rate of each timekeeper during the period covered by the invoice.

I may assign parts of your work to other lawyers or other personnel in the office and may use other firm lawyers where specialized help is needed. I will continue to be responsible to you for the entire engagement, however, and will be available to discuss with you the use of other personnel. It is our practice to assign tasks among lawyers, legal assistants and other members of our staff in such a way as to produce quality work at a reasonable cost to you, given the nature of the specific project.

If a dispute arises between us relating to our fees, you may, in certain circumstances, have the right to arbitration of the dispute under Part 137 of the Rules of the Chief Administrator of the Courts of New York State, a copy of which will be provided upon request.

It is the policy of our firm that, to the extent consistent with our professional responsibilities, we will perform no further legal services for you if you become more than sixty days delinquent in the payment of our bills, unless that delinquency is cured.

3.   Retainer.

As a matter of policy, we require new clients of the firm to pay us an initial retainer. Based upon that policy, we ask that you pay us the sum of $20,000 USD, we will provide the receipt once the retainer is received. That sum would be drawn upon to pay fees and expenses incurred during the course of our representation. If that sum is exhausted, we will bill you for such additional costs and services, and we will expect payment upon receipt. We also reserve the right to request an additional retainer from you during the course of our representation. We will refund to you at the conclusion of our representation any unused portion of your retainer.

4.   Expenses Incurred and Other Charges.

In addition to our fees, unless waived by us, we will expect you to reimburse us for all expenses incurred on your behalf, including long distance calls, travel costs, air freight, commercial messengers, computer research terminal time and printing costs, secretarial and word processing overtime when dictated by your needs and the like; we will expect you to pay us for all photocopying (currently 15¢ per page) and telecopying (currently 50¢ per page) done by us with respect to your matter(s); and if we are asked to incur any such expense on your behalf in excess of $2,000 USD in any one instance, we will ordinarily ask you to prepay those expenses. In addition, we will ordinarily expect you to pay directly the fees and expenses of any third parties, such as consultants, appraisers, expert witnesses and court reporters, engaged with respect to your matter(s), where the amount of any such fee or expense exceeds $2,000 USD in any one instance. In the event that, before or after our representation concludes, we are served with a subpoena, or request for production of documents or testimony by any person or entity in connection with your matter, you agree to pay for all of our reasonable fees and costs incurred in responding to such demand.

19325122.1922222-11351



Ms. Anna Cui
Jin Yuan Lei
August 5, 2020
Page 3

Confidential: Attorney-Client Privileged Communication

5.   Billing Practices.

We will send an invoice, monthly, detailing all of the fees, costs and expenses incurred during the previous month. Payment of the invoice is due upon receipt. These invoices will give you sufficient detail to enable you to determine who performed the services on your behalf, the amount of time expended in performing those services and the nature of the expenses incurred.

6.   Termination of Representation.

The attorney-client relationship is one of mutual trust and confidence, and you are, of course, free to terminate our relationship at any time. If you do so, we will be pleased to reimburse you immediately for any unexpended portion of your retainer if applicable We will also be free to terminate the relationship at any time, and should that unlikely event occur, we will do so in a manner which complies with applicable law, court rules and the Rules of Professional Conduct of the State Bar of New York. These rules permit us to withdraw if, among other reasons, your conduct renders it unreasonably difficult for us to carry out the representation effectively, you fail to pay the fees or costs of third parties engaged with respect to a matter or you fail to pay our fees and costs in accordance with this Agreement.

7.   No Calendaring, Tracking or Collections.

You acknowledge that agreements entered into by you may require the giving of notice, the exercising of rights (e.g., options), the making of payments by a specified time, or the making of other decisions within certain time periods (e.g., exercising any audit rights, granting an approval or consent, filing UCC Continuation Statements, filing legal actions or replying to legal claims), and that you understand and agree that we will not be responsible for determining or monitoring these time periods, or any dates or calendar items, or tracking compliance on your behalf. Further, you understand and agree that we are not responsible for collecting monies due to you under any agreements entered into by you. We may assist you in billing for monies owed or in following up on billing requests or other deadlines, but such assistance would be offered only as a courtesy and imposes no obligation on us. We will track deadlines in any litigation in which we are your counsel of record.

8.   File Retention Policy.

You understand and agree that any materials left with us after the engagement ends may be retained or destroyed, at our discretion. Notwithstanding the foregoing, and while preserving any rights that we may have regarding retention of such materials, we will return and/or preserve any original wills, deeds, contracts, promissory notes or other similar documents unless you instruct us otherwise in writing. We reserve the right to make, at our expense, and retain copies of all documents generated or received by us in the course of our representation, and to charge you for the cost of storage of your files.

In the event that during or following the conclusion of our representation, you request that we provide you with a copy of the materials in your file (either hard copy or electronic) you agree to pay us for all reasonable search costs and copying costs incurred in responding to your request.

19325122.1922222-11351



Confidential: Attorney-Client Privileged Communication

9.     Document Preservation.

You understand and agree that, to the extent the matter(s) on which we are representing you involve the reasonable likelihood of litigation, you may be legally required to preserve all relevant documents, in electronic or hard copy form, and to suspend any routine document retention/destruction policies that may be in place.

10.    Use of Name in Marketing Materials.

You understand and agree that we may make public reference to any matters in which our representation is a matter of public record, or to which you agree, consistent with our ethical responsibilities. Such references may include, without limitation, on our firm website, attorneys' biographical experiences, brochures, matter lists and other promotional materials.

11.    Arbitration and Costs.

We look forward to a long and mutually productive relationship with you. However, if you become dissatisfied for any reason, we encourage you to bring that to our attention immediately. It is our belief that most such problems can be resolved by good faith discussions between the parties. Nevertheless, it is always possible that some dispute may arise which cannot be resolved by discussions between us. We believe that such disputes can be resolved more expeditiously and with less expense to all concerned by binding arbitration than by court proceedings.

Arbitration is a process by which both parties to a dispute agree to submit the matter to an arbitrator and to abide by the arbitrator's decision. In arbitration, there is no right to a trial by jury, and the arbitrator's legal and factual determinations are generally not subject to appellate review. Rules of evidence and procedure are often less formal and rigid than in a court trial. Arbitration usually results in a decision more quickly than proceedings in court, and the attorneys' fees and other costs incurred by both sides are usually less. Of course, you are encouraged to discuss the advisability of arbitration with other counsel or any of your other advisors and to ask any questions which you may have.

By executing this letter you agree that if any dispute between you and the firm arises out of this Agreement, our relationship with you or our performance of any current or future legal services, whether those services are the subject of this particular engagement letter or otherwise, that dispute will be resolved solely by binding arbitration in New York, New York, before one arbitrator who shall be a retired New York state or New York federal judge or magistrate (to be designated through JAMS) and pursuant to the Comprehensive Arbitration Rules and Procedures (as then in effect) of JAMS. The disputes subject to binding arbitration will include, without limitation, disputes regarding or alleging negligence, malpractice, breach of fiduciary duty, fraud, any claim based upon a statute, as well as any dispute as to the fees, or the arbitrability of any such claims. The arbitrator's award will be final and binding, and judgment thereon may be entered in any court of competent jurisdiction. Arbitration will be the sole means of resolving any such disputes, and both parties waive their rights to resolve disputes by jury trial or other court proceedings.

The parties acknowledge that this engagement agreement is a contract involving interstate commerce and that, notwithstanding the governing choice of law provision in this Agreement, this arbitration provision will be interpreted under the Federal Arbitration Act.



Confidential: Attorney-Client Privileged Communication

12.   Governing Law.

This Agreement and its enforcement shall be governed by the laws of the State of New York without reference to conflict of law rules.

13.   Joint Representation Waiver.

As you know, we will be representing both of you in this matter. While such joint representation is not unusual, the Rules of Professional Conduct of the State Bar of New York require us to obtain your consent to such joint representation and to advise you of certain consequences resulting from that representation. For example, although we are not aware of any conflict which presently exists between you, the potential for such conflicts exists, and if an actual conflict arises in the future, we may not represent either of you in that conflict unless we receive your further written consent to the representation. In addition, information furnished to us by either of you in the course of the representation will not be considered confidential information and may be disclosed to each of you, and neither of you may claim an attorney-client privilege with respect to such communications to us in a civil proceeding in the event of litigation between you.

Each of you confirms that we have afforded you the opportunity to ask and have answered to your satisfaction any questions you may have relating to our joint representation of you in connection with the engagement described above. Each of you also acknowledges that we have afforded you the opportunity to consult with other counsel about the potential conflicts of interest and the possible resulting adverse effects of our representation of you jointly, and that you consent to such joint representation.

14.   Conflict of Interest.

We represent many other clients. You agree that we may represent, now and in the future, other persons and entities. In particular, you agree that while we are representing you in active, pending matters, we may represent other clients in any matters adverse to you (or which may be adverse to any of your subsidiaries or affiliates), provided that the matters (a) are not substantially related to active matters we are working on for you, (b) do not involve situations where we have obtained confidential information from you that is material to the new matter(s), or (c) are not litigations or arbitrations in which we are adverse to you. Additionally, if our representation of you is terminated, we may thereafter represent other clients with interests adverse to yours, or your affiliates or subsidiaries (even in litigation), provided that the representation does not involve confidential information we have obtained from you that is material to those matters. By executing this engagement agreement you are agreeing to waive any conflict of interest that arises in any of the aforementioned situations. If for any reason your consent and waiver of potential conflicts is not effective in the circumstances, you consent to our resignation from our representation of you if such resignation is permissible under applicable professional rules.

In addition, please be aware that Loeb & Loeb has internal ethics and professional responsibility counsel, who advise Loeb & Loeb attorneys generally regarding their ethical, professional and legal duties. From time to time, the Loeb & Loeb attorneys working on your matter may consult these lawyers. You acknowledge that any such consultation is protected by Loeb & Loeb's own attorney-client privilege, and you waive any right to discovery of those communications. Should circumstances arise in which Loeb & Loeb faces a conflict of interest with respect to or by virtue



Ms. Anna Cui
Jin Yuan Lei
August 5, 2020
Page 6

Confidential: Attorney-Client Privileged Communication

of these communications, you agree to waive that conflict. You also agree that such communications are property of the firm and are not part of your files for purposes the aforementioned File Retention Policy.

15. Complete Agreement.

This letter represents the entire agreement between you and our firm regarding our representation and supersedes any prior agreements or understandings. If you ever have any concerns about our work, please feel free to contact Kenneth Florin, our Chairman.

If you agree with the foregoing, please sign the enclosed copy of this engagement agreement, and return it to me.

I am looking forward to working with you. Thank you again for choosing Loeb & Loeb.

Sincerely

Benjamin Qiu
Partner

19325122.1922222-11351

Confidential LOEB_0015743



Confidential: Attorney-Client Privileged Communication

The undersigned has read and understood this engagement agreement and acknowledges that this engagement agreement is subject to binding arbitration as provided above. The undersigned represents that he or she has been expressly authorized to enter into this Agreement on behalf of Hangzhou Chic Intellgent Technology Co, Ltd.. The foregoing accurately sets forth all the terms of your engagement and is approved and accepted as of August __10__, 2020.

HANGZHOU CHIC INTELLIGENT TECHNOLOGY CO., LTD.

By: _____
Its:

The undersigned has read and understood this engagement agreement and acknowledges that this engagement agreement is subject to binding arbitration as provided above. The undersigned represents that he or she has been expressly authorized to enter into this Agreement on behalf of Unicorn Global, Inc. The foregoing accurately sets forth all the terms of your engagement and is approved and accepted as of August __10__, 2020.

UNICORN GLOBAL, INC.

By: _____
Its:

Confidential　　LOEB_0015744